[No. 40252.    Department Two.    May 22, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY WARREN HICKS, *Appellant.**

*Donald J. Horowitz* and *Farris, Bangs & Horowitz,* for appellant (appointed counsel for appeal).

*Charles O. Carroll, Edmund P. Allen, Gerald M. Lorentson* and *Truman Castle,* for respondent.

ROSELLINI, J.—The defendant waived a jury trial in this prosecution for robbery and was found guilty by the court. The sole contention on appeal is that the denial of the defendant's constitutional right to have counsel present at a police lineup, in which he was identified by the principal witness against him, tainted the prosecution's case against him to the extent that his conviction cannot stand.

It is conceded by the prosecutor that the defendant was not advised of his right to have counsel present at the lineup. However, the prosecutor urges that the denial of this right resulted in no prejudice to the defendant for two reasons, first, that the witness's in-court identification of the defendant was based on his impressions gained before the lineup and was therefore independent of it, and, second, that there was evidence in addition to this identification which showed the defendant's guilt beyond a reasonable doubt.

*Reported in 455 P.2d 943.

In the recent case of *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), the United States Supreme Court held that the identification procedure known as the "police lineup" is a critical stage in the prosecution of a defendant, at which he is entitled to have the assistance of counsel. The rule of that case was applicable when the lineup was conducted in this case on June 25, 1967. *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1198, 87 S. Ct. 1967 (1967).

The Supreme Court was careful to point out in *Wade,* however, that failure to advise a defendant of his right to have counsel present at the lineup will not vitiate every conviction, but the burden is upon the prosecution to show that the denial of this right did not prejudice his defense. The court said:

> We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun v. United States,* 371 U. S. 471, 488, " '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt 221 (1959)." See also *Hoffa v. United States,* 385 U. S. 293, 309. Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.

(Footnote omitted.) *United States v. Wade,* 388 U.S. at 241.

The evidence here showed that the defendant attended the Ridgmont Theatre in Seattle on the evening of June 24, 1967, by his own admission. The manager testified that he observed him several times during the evening, first as he stood outside the theatre, later as he stood in the lobby

waiting with others to be admitted, later alone in the lobby, and also seated at one time in the theatre. He was wearing a light-colored hat and a green jacket. He had a patch of adhesive tape, like a Band-Aid, on his chin. The manager finally observed the defendant at very close range when he approached him in the lobby and asked to speak to him. The manager took him into the very small office of the theatre, and there the defendant pulled a gun from his pocket and demanded the "paper" money. For several minutes he directed the manager to look in various places in the office for more money. He then told the manager to kneel on the floor, struck him a blow on the head and fled, taking with him approximately $62, consisting mostly of $1 bills but including two Canadian $1 bills and more than one $5 bill.

The manager called the police immediately, and less than 15 minutes later the defendant was arrested in his car approximately two blocks from the theatre. In the car were found a gun with a description matching that given by the manager, a paper bag containing money in the denominations and amount described by the manager, and, among other things, a makeup kit and a roll of adhesive tape. The defendant was not wearing a hat or jacket nor did he have a piece of adhesive tape on his face when he was arrested, but there was residue from adhesive tape on his chin.

The lineup was conducted 2 hours after the arrest and the manager identified the defendant immediately in a line consisting of five men of similar age, height and general physical description, even though he was not wearing the hat and jacket (these were found later near a garbage can outside the theatre) and even though the adhesive tape had been removed..

The defendant took the stand and denied committing the robbery. He said that he had attended the theatre on the evening in question but had become bored with the motion picture being shown and had left, telling a companion that he would wait for him in the car. He said that he sat in the car for more than an hour, and was just starting up to drive to the entrance of the theatre and pick up his friend when

the police stopped him. According to his testimony, he had no idea how the gun and the bag of money came to be in his car.

As in *State v. Redmond,* 75 Wn.2d 62, 448 P.2d 938 (1968), the record before us establishes that the identifying witness had ample opportunity to observe the defendant both before and during the robbery and to gain a clear impression of his appearance. Also, the description given police before the arrest fit the defendant, the manager did not fail to identify the defendant on any occasion, and the lineup was conducted within a few hours after the robbery. In short, all of the tests prescribed by *Wade* are met by the identification testimony in this case.

Furthermore, as the trial court observed, there was evidence independent of the manager's identification which proved the defendant's guilt beyond a reasonable doubt. This was the evidence that he was found near the theatre, in possession of money conforming to the description of that which was stolen and a gun which was of the kind described by the victim. By his own testimony, he had been sitting in the car during the entire time that the robbery was committed and after, until the moment of his arrest. Therefore, these items could not have been "planted" there as he suggested in his attempt to exonerate himself.

Thus, it is clear that not only did the in-court identification have an independent source, but the introduction of the evidence was harmless error in any event, there being other evidence establishing the defendant's guilt beyond a reasonable doubt.

The judgment is affirmed.

HUNTER, C. J., HALE and NEILL, JJ., and DONWORTH, J. Pro Tem., concur.