[No. 77-40669-1.   Division One.   November 24, 1969.]
Panel 2

THE STATE OF WASHINGTON, *Respondent,* v. HARRY LEE PRATER, *Appellant.*

*Casey & Pruzan* and *Richard A. Acarregui,* for appellant (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney,* and *Steve Paul Moen, Deputy,* for respondent.

HOROWITZ, A. C. J.—Defendant appeals from a judgment entered upon a jury verdict convicting the defendant of the crime of robbery. The trial court denied defendant's motion for new trial. Defendant appeals.

■■ The controlling question here is whether the defendant was convicted in violation of due process. In turn, the answer to that question is whether "eyewitness identification" of the defendant "at trial following a pretrial identification by photograph will be set aside" because "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). We are called upon to review the entire record because, as *Simmons* pointed out: "each case must be considered on its own facts, . . ." at 384. *People v. Coffey,* 67 Cal. 2d 204, 430 P.2d 15, 60 Cal. Rptr. 457 (1957). Furthermore, if error was committed, we must determine upon a consideration of the entire record whether in the language of *Chapman v.*

*United States,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) "the court . . . " is "able to declare a belief that it was harmless beyond a reasonable doubt." To resolve these issues, we detail the evidence at some length.

At approximately 8:30 a.m. on the morning of May 21, 1968, Mrs. Masuko Mary Tenma, a 73-year-old woman, was leaving her Seattle apartment when she was approached by a young male Negro wearing black pants and a black jacket. He asked her if she had any apartments for rent. When she replied in the negative, he pushed her back into her apartment, struck her several times with her cane, caused her to drop her glasses, tore off most of her clothes and attempted to have sexual intercourse with her. After failing in this attempt, the assailant found Mrs. Tenma's purse and removed money therefrom including one $10 bill, four $5 bills and three or four $1 bills. There was no evidence that Mrs. Tenma was unable to see her assailant without her glasses.

Mrs. Tenma then noticed a wallet on the floor, on the inside of which, written in ink, was the name "Harry Lee Prater." The wallet contained a claim check from a TV repair shop. Mrs. Tenma telephoned the Seattle Police Department. When the officers arrived she gave them the wallet and claim check, a physical description of her assailant and a description of the money taken. The officers obtained the address of the defendant through the TV repair shop and went to the defendant's home about two blocks away from Mrs. Tenma's apartment, arriving about 9:05 a.m. There, the defendant's mother, upon being asked by the officers if they could speak with the defendant, took them to the defendant's bedroom. Defendant was asleep on his bed, wearing black pants and a black jacket. On the bed the officers observed some money. They placed the defendant under arrest and seized the money. The money seized included one $10 bill, four $5 bills, four $1 bills and $1.11 in change. The officers then took the defendant to police headquarters where a colored Polaroid picture was taken of him seated in a room.

That same morning at approximately 11:30 a.m., Seattle policewoman Joyce Johnson interviewed Mrs. Tenma and showed her six colored Polaroid pictures of young Negro males to see if she could identify any as her assailant. Mrs. Johnson did not indicate that the police department had a "suspect" whose picture was in the group. She testified that the six photographs contained pictures of persons of the same age and the same coloring "not the entire body, . . . All you could see is the face, from the chest up." and that the suspect's portrait was "somewhere in the middle." Mrs. Tenma selected the defendant's photograph, positively identifying it as the picture of her assailant. Policewoman Johnson then left, placed the defendant's picture in the police department's file on the Tenma case and returned the other five photographs to the police department's photograph collection without recording any information about these photographs. This was normal police procedure at the time.

Later, on May 21, at approximately 1:05 p.m., Mrs. Tenma attended a lineup consisting of six Negro males held at the Seattle Police Headquarters. From this lineup Mrs. Tenma positively identified the defendant as her assailant. On May 23, 1968, the defendant was charged in Seattle District Justice Court with robbery, and a preliminary hearing was held on June 7, 1968, at which Mrs. Tenma described the incident of May 21 and identified the defendant as her assailant.

On October 17, 1968, a jury trial was held resulting in a verdict of guilty. In its case-in-chief the state called Mrs. Tenma, the two police officers who had called on her on May 21, 1968, the owner of the TV repair shop and policewoman Johnson, all of whom testified to the foregoing facts. Mrs. Tenma positively identified the defendant in court as her assailant. When asked whether her identification of the defendant was based upon the facts as she remembered the incident or based upon the fact that she saw the pictures and attended the lineup, she testified: "No, I know his face distinctly. I can describe myself, not

with the picture. Well of course the picture show, yes, but I know his face because I gaze him and inscribe in my mind so I cannot miss such an occasion."

During policewoman Johnson's testimony and after defendant's photograph, which had been selected by Mrs. Tenma as the photograph of her assailant, was introduced in evidence without objection, it appeared on cross-examination that the witness was unable to produce the additional five photographs. She explained how the photographs had been selected and their subsequent disposition, all as already described. Defendant's trial counsel, who is not counsel on this appeal, moved to strike the testimony regarding photographic identification on the ground that he was unable to cross-examine on this matter because he could not see the additional five photographs. He also moved to strike testimony of the lineup identification and testimony thereon on the ground that it was tainted because of the way the original photograph identification had been made by Mrs. Tenma. The trial court declined to strike the testimony.

Defendant testified in his own behalf, denying involvement in the attack upon and the robbery of Mrs. Tenma. He testified that the wallet found by Mrs. Tenma was his wallet, but that he had lost it prior to May 21; that the claim check had been in the wallet when he lost it; that at the time of the robbery of Mrs. Tenma he was returning home, or had returned home, after having been out all night; that he remembered having his own money because he had stopped at a grocery store on the way home and purchased some bologna and orange soda pop; that he had received the money found on his bed from two acquaintances whom he named. Defendant's mother testified that the defendant had arrived home on May 21 about 9 a.m. or shortly thereafter; and she remembered his having some bologna when he came into the house.

In rebuttal, the state called Seattle Police Detective James A. Parker, who testified to certain statements made

by the defendant while he was in the city jail on May 22, inconsistent with defendant's trial testimony.

■■ Evidence of extra judicial or pretrial identification of an accused is, of course, admissible as independent and substantive proof of identification. This includes identification by photograph or at lineup. *State v. Simmons,* 63 Wn.2d 17, 385 P.2d 389 (1963); Annot., 71 A.L.R.2d 449; 46 Am. Jur. *Robbery* § 45 (1966). It is not a condition precedent to the admissibility of one of the photographs selected by the victim as identifying the assailant that all photographs shown the victim for that purpose be produced by the state. *People v. Bryant,* 256 Cal. App. 2d 470, 64 Cal. Rptr. 86 (1967). Indeed, appellant's counsel at oral argument did not claim otherwise.

■ The defendant contends, however, that the pretrial photographic identification of the defendant deprives the defendant of a fair trial in violation of due process. He relies on *Simmons v. United States, supra,* claiming that there was a necessity for pretrial photographic identification in *Simmons,* whereas, there was no such necessity in the instant case. Even if the factual distinction be correct, we do not deem it of controlling significance. *Simmons* did not hold that a photograph may be taken only if necessary. Such a rule would place an inexcusable obstacle in the apprehension of offenders and increase the likelihood that innocent suspects would be arrested.

In the instant case, there was not only pretrial selection of the photograph by the victim within 2½ hours after the assault and robbery; there is identification by the victim based on her independent recollection in the lineup, at the preliminary hearing and at the trial. *State v. Kearney,* 75 Wn.2d 168, 449 P.2d 400 (1969); *State v. Griff,* 75 Wn.2d 267, 450 P.2d 486 (1969); *State v. Gefeller,* 76 Wn.2d 449, 458 P.2d 17 (1969). Furthermore, the victim's testimony concerning identification was circumstantially confirmed by evidence showing that the clothing worn by the defendant when arrested about one-half hour after the commission of the offense matched the clothing worn by the assailant at

the time of the offense; and that the denominations of the currency found in the defendant's possession when he was arrested matched the denominations of the currency taken from the victim. The two acquaintances from whom defendant claimed to have received the money found in his possession were not produced at trial and no reason was given by defendant or on his behalf for their failure to testify. We agree with the trial court that no error was committed.

The judgment is affirmed.

UTTER and STAFFORD, JJ., concur.