[Nos. 211-2, 191-2. Division Two. December 22, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. LAWRENCE DUNCAN FERGUSON *et al.*, *Appellants*.

A'Lan S. Hutchinson, for appellant Ferguson (appointed counsel for appeal).

R. G. Hutchins, for appellant Garner (appointed counsel for appeal).

Ronald L. Hendry, Prosecuting Attorney, Joseph D. Mladinov, Special Counsel, and Eugene G. Olsen, Chief Criminal Deputy, for respondent.

PEARSON, J.—At approximately 10 p.m. on October 22, 1969, there was a robbery at the Seven-Eleven Store at 40th and McKinley Avenue in Tacoma. One man, who was armed with an automatic pistol, held up the lady clerk who was on duty. As the robber left, he met a customer who was just coming into the store at the door. Both the customer and the clerk saw the robber's face, since he was

unmasked. The customer also remembered seeing an older model, General Motors stationwagon, light in color but dirty, with a figure in the driver's seat, parked in the dimly lighted parking lot of the store. The car had its engine running.

The victim and the witness called the Tacoma police and gave a vague description of the robber and of an older, dirty stationwagon. Officers Moore and McCoy, who were on patrol in a nearby area of the city, received a radio report of a robbery in progress and proceeded, as they said, to set up a checkpoint. That is, they proceeded to a position which the fleeing felons might pass as they sought to escape, in this case an entrance to Interstate 5 located at 28th and Portland Avenue. At about 10:10 p.m., just as they were about to reach their checkpoint, the officers noticed an old model, dirty, light-colored stationwagon proceeding toward the freeway. They turned their own car around and, with the siren and red light, stopped this car, which had two occupants. Officer McCoy saw the passenger lean forward, as though he were putting something under the front seat. The officers approached the car and Moore requested the driver to produce his operator's license and to step out of the car, since there had been a robbery which the officers were investigating. The driver was defendant Garner. Officer McCoy then asked the passenger to exit the vehicle and to produce identification. This man was the defendant Ferguson. Officer Moore radioed for a record check on the two individuals and then went back to the stationwagon where, on looking through a window, he observed the handle of what turned out to be a .32 caliber Beretta automatic pistol. The officers then frisked their suspects and, when they felt a bulge in one of Ferguson's pockets, recovered some $28.25. The money, the gun, and the defendants were then transported to the police station.

After their arrival at the station, a detective gathered up nine photographs and took them out to show to the two witnesses. With considerable uncertainty, the store clerk picked out a photograph of defendant Garner. The cus-

tomer picked out photographs of both defendants, but also expressed uncertainty. Both witnesses identified defendant Ferguson at trial. Neither was able to identify Garner.

In addition to the identifications, Ferguson made an oral confession to two detectives, though he refused to sign a written statement. Evidence of the confession was introduced at trial. Both men were convicted and both have appealed. The appeals raise somewhat different issues and will be discussed separately.

## DEFENDANT LAWRENCE FERGUSON

Defendant Ferguson raises two major issues: (1) whether the search which revealed the money on his person was reasonable, and (2) whether the use of photographs for identification purposes was proper, where the suspects were in custody before the identification was undertaken.

 It is axiomatic that the touchstone of any discussion of a search and seizure is reasonableness. Reasonableness is measured by considerations of degree—the breadth of the invasion of personal liberty entailed in the custodial detention must be compared with the state interests advanced thereby before reasonableness can be determined. *See Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Reasonableness is thus preeminently a fact question. *Cf. Henry v. United States,* 361 U.S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168 (1959); *Sibron v. New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968).

 When we consider all of the circumstances, we feel that the conduct of the officers here was not unreasonable. The initial interference with the defendant's freedom of movement was a relatively small one, and the reasons for it must be ranked above mere suspicion. When the officers first saw the defendants, they were near an entrance to a freeway, on which they could quickly effect an escape. They were driving in a car that matched the description of the car the witness had seen—a 1962 Oldsmobile stationwagon, light in color and dirty. As the officers

approached the car, one of them saw the passenger bend forward as though he were hiding something under the front seat. The officers were aware that an armed robbery had occurred and that the vehicle stopped was within an area where the fleeing felons might be. [The officers then asked for identification and asked the two people to step out of the car. The defendants appeared nervous but complied. As of this time, the interference with personal liberty was comparatively slight and the reasons for it quite strong. *See State v. Ellison*, 77 W.D.2d 888, 467 P.2d 839 (1970). When persons are stopped near the scene of a robbery and shortly thereafter, in a car matching the available description of the getaway vehicle, it does not seem to us unreasonable to ask the occupants of the car to identify themselves and to remain a few moments while records are checked. *See Terry v. Ohio, supra; State v. Todd*, 78 W.D.2d 361, 474 P.2d 542 (1970). Neither can we characterize the later search as unreasonable. Officer Moore, after requesting the record check, went back to the defendant's vehicle and looked in through a window. He saw the handle of what turned out to be a pistol projecting from under the front seat of the car. Of course, as the Supreme Court of Washington has said, merely looking through a window and seeing what is there to see does not constitute a search within the meaning of the fourth amendment of the United States Constitution. *See State v. Brooks*, 57 Wn.2d 422, 357 P.2d 735 (1960); *State v. Sullivan*, 65 Wn.2d 47, 395 P.2d 745 (1964); *Marshall v. United States*, 422 F.2d 185 (5th Cir. 1970). We think that once the officer found a partially hidden weapon in a car resembling one that had been described as being used in a robbery that was nearby in both time and place, he was justified in frisking the two defendants. Officer Moore said that when he frisked defendant Ferguson, he felt a bulge in one of the pockets. We think the officer was justified in searching inside this pocket. This search disclosed the $28.25 and a closed pocket knife, with a blade in excess of 3 inches. The money and the pistol were properly admitted into evidence.

This leaves us with the more difficult of defendant Ferguson's contentions, that regarding the use of photographs to identify him after he was in custody and available for a lineup.

Our starting point for consideration of this question is the now-famous "lineup trilogy"—*United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967); *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967); *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967). In *Wade,* the Supreme Court noted the progression of its decisions toward rendering the Sixth Amendment right to assistance of counsel an effective right. In doing this, the court stated that it was seeking to give defendants legal assistance at crucial stages in the process ultimately leading to trial stages where the issue of guilt or innocence may well effectively be resolved, leaving the trial only as a formality to be decided on the basis of pretrial occurrences. Eyewitness identifications are notoriously inaccurate and eyewitnesses are subject to many forms of subtle suggestion. Once an identification has been made, the Supreme Court has recognized how difficult it is for the identifying witness to retract his identification or even to realize he may be wrong in it. Without being present, trial counsel would be sorely pressed in determining whether any prejudicial suggestion as to the identification occurred. This rationale has also been applied to the states through the Fourteenth Amendment. *Gilbert v. California, supra; Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963).

Somewhat on the other side of the argument stands *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). This case allowed photographic identification of an accused bank robber who was at large when the identification was made. Matters of police necessity were weighed against the considerations advanced in *Wade.* The court was careful, however, to point out in its decision that it was approving only the procedure before it. Questions in

this area are largely ones of fact and of striking a balance between police needs and individual rights.

██ It seems to us that in the case we face now, the procedure complained of transgresses *Wade* and does not fall within the protection of *Simmons*. The same type of difficulties which the court mentioned in *Wade* seem to us likely to be present in the instant case. The chance of subtle, even unintentional influence on a wavering witness is probable, particularly one who has recently faced the emotional shock of witnessing a crime of violence. Police may understandably, though perhaps innocently and unintentionally, seek to strengthen the case against one they have in custody. In this case, a lineup conducted in conformity to *Wade* could have been conducted. We feel that it ought to have been conducted and that, though these officers may not have sought to do so, the police should be discouraged from avoidance of the command of *Wade*.[1] We find it most unusual and suspect that even though but one of the two defendants entered the store so as to be seen by the witnesses, both of their photographs should have been selected as possible participants in the robbery. However, we think the error involved in admission of an identification at trial following an improper extrajudicial identification by the use of photographs, was harmless. Other untainted evidence was sufficient to convict Ferguson. The lack of the identifications was, we think, unlikely to change the result of the jury's deliberations. *See Gilbert v. California, supra.* Defendant Ferguson was found with money on his person and a gun under his seat in the car. He was found a short distance from the scene of the robbery in a car which looked like one seen at the scene of the crime, which occurred only a short time before the arrest. Finally, after a knowing waiver of his right to remain silent, Fergu-

---

[1] It is axiomatic that this court is bound by the Fourteenth Amendment to the federal constitution. The Sixth Amendment's protection, as outlined in *Wade,* also applies to the states, through the Fourteenth Amendment. *Gilbert v. California, supra.* Thus, we must follow the *Wade* rationale. *But see State v. Gefeller,* 76 Wn.2d 449, 458 P.2d 17 (1969).

son orally confessed to the offense. The identifications were cumulative, so this admission was harmless, since we fail to see how suppression of it could have changed the result of the trial. *See State v. Hicks,* 76 Wn.2d 80, 455 P.2d 943 (1969); *State v. Prater,* 1 Wn. App. 342, 461 P.2d 357 (1969). Upon reading the whole record, we must say that beyond a reasonable doubt, this error was harmless as to Ferguson. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, *rehearing denied* 386 U.S. 987, 18 L. Ed. 2d 241, 87 S. Ct. 1283 (1967). Thus, affirmance of defendant Ferguson's conviction is proper.

### DEFENDANT KEITH GARNER

Defendant Garner raises three primary issues, as well as the search and seizure issue discussed above.

First, he contends that his Sixth Amendment right to confront his accusers was violated when Ferguson's oral confession was allowed in evidence and when Ferguson declined to testify he was deprived of his right to cross-examine his accusers. He relies upon *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968).

It should be pointed out initially that Ferguson's confession was to the effect that he had entered the store and robbed it with his own gun. It did not name Garner as an accomplice nor did it reasonably suggest that there was an accomplice.

In *Bruton,* the petitioner (Bruton) and one Evans were jointly tried for armed postal robbery. In the course of the trial, a postal inspector was allowed to testify that Evans had made an oral confession to the effect that he and Bruton had committed the offense. Evans, who then in effect became one of Bruton's accusers, declined to testify. The United States Supreme Court reversed Bruton's conviction on the grounds that his Sixth Amendment right to confront his accusers was violated, since confrontation requires the right to cross-examination. The court also held that an instruction advising the jury to consider the confession only as to the confessor did not cure the error.

We do not find that case to be applicable to the case before us.

We hold that *Bruton* does not apply where, as here, the confession of Ferguson did not mention nor incriminate Garner, either expressly or by direct inference. *See State v. Gibson,* 3 Wn. App. 596, 476 P.2d 727 (1970). *See also United States v. Sims,* 430 F.2d 1089 (6th Cir. 1970), where the court indicates its intention to restrict *Bruton* to its facts; *cf. California v. Green,* 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970); where the United States Supreme Court places further restrictions on the constitutional implications of the right of cross-examination.

The administration of justice would be greatly burdened if required to accommodate separate trials in all cases where multiple parties have participated in a criminal offense and where one or more have confessed to its commission. Separate trials should be required only in those instances in which an out-of-court statement by a codefendant expressly or by direct inference from the statement incriminates his fellow defendant. Only then does the inability to cross-examine the codefendant become constitutionally prohibited. *See California v. Green, supra.*

We find no error in the refusal of the trial court to deny defendant Garner a separate trial.

Defendant Garner also challenges the sufficiency of the evidence linking him to the crime of robbery under RCW 9.01.030. In our view, the state made a prima facie case against Garner by showing:

(1) that an accomplice was seen in the driver's seat of an automobile parked at the scene of the robbery;

(2) that a similar car was stopped a short distance away a few minutes later; and

(3) that there was money and a weapon in the car on the person of the passenger in the car and that Garner was its driver. *State v. Taylor,* 47 Wn.2d 213, 287 P.2d 298 (1955).

Finally, defendant Garner objects to various instructions

which we set forth,[2] objecting to the slant which they manifest in favor of the prosecution.

As will be observed, these instructions are concerned with defining the various constitutional protections afforded one accused of a crime, namely the "presumption of

---

[2]Instructions 2, 4, and 13 read:

"Instruction 2.

"The State of Washington by this amended information charges the defendant with the commission of a crime. A crime is defined by law as an act or omission prohibited by public law for the protection of the public, and made punishable by the State in a judicial proceeding in its own name. It is a public wrong as distinguished from a mere private wrong.

"*The object of all criminal proceedings is the protection of society against the wrongdoer.*

"A person charged with a crime is accorded certain constitutional rights and privileges regarding which I will hereinafter instruct you. These constitutional rights, privileges and guarantees you will observe and apply. *These constitutional guarantees and privileges are intended for the protection of an innocent man and not for the purpose of aiding the guilty to escape.*

"*You are here as a component part of the Court in the administration of justice. Of this fact you must not lose sight.*" (Italics ours.)

"Instruction 4.

"The rule of law which clothes every person charged with crime with the presumption of innocence and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt, *is not intended to aid any person who is in fact guilty of crime to escape, but it is a humane provision of the law intended, so far as human agencies can, to guard against the danger of any innocent person being unjustly punished.*" (Italics ours.)

"Instruction 13.

"By the term 'reasonable doubt' is meant as the term implies, a doubt based upon reason—it must have something to rest on—and such a doubt arising either from the evidence or lack of evidence as a reasonable man would reasonably entertain. A doubt to be reasonable must be such a doubt as an honest, sensible and fair minded man might with reason entertain consistently with a conscientious desire to ascertain the truth. A doubt which is fanciful, imaginary, a vague conjecture, a mere whim, or a groundless surmise, or *an inference of the possibility of the innocence of the accused,* is not a reasonable doubt. A doubt to justify acquittal must be reasonable and must arise from a candid and impartial consideration of all the evidence. *It must not arise from a merciful disposition or a kindly or sympathetic feeling for the defendant or for his family, or a desire to avoid performing a disagreeable duty.* Guilt need not be proven beyond any possible doubt or with absolute certainty." (Italics ours.)

innocence" and the meaning of "reasonable doubt." We do see some merit in the criticism of the form of these instructions, since the thrust is to impress the jury with its duty to find the guilty, rather than to vindicate the innocent. There is nothing in the substance of the instructions which erroneously directs the jury to deny any constitutional guarantees, and for this reason, we do not find them to constitute reversible error. However, we would suggest that the basic rights as defined in the instructions are deserving of a greater respect and that the interests of justice would be better served in the future by a more neutral statement, free of *any* suggestion that they can be ignored in the face of expediency.

Judgment affirmed as to both defendants.

ARMSTRONG, C. J., and PETRIE, J., concur.

Petition for rehearing denied January 8, 1971.

Review denied by Supreme Court February 23, 1971.