[No. 1068-1.    Division One—Panel 1.    May 1, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. VICTORIA
LEE MOORE, *Defendant*, TAISA M. FULLER, *Appellant*.

2

*Wacker & Durham* and *Barbara M. Durham,* for appellant.

*Robert E. Schillberg, Prosecuting Attorney,* and *David G. Metcalf, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant Fuller and codefendant Moore were charged with robbery while armed with a deadly weapon. Defendant Fuller pleaded not guilty by reason of insanity. She was convicted, the jury finding, however, that she was not armed with a deadly weapon when she committed the crime. She appeals.

Joanna Howard, victim of the crime, owns a small retail clothing store in Darrington, Washington. On August 3, 1970, defendants spent about 2 hours shopping in her store while she waited on them. They then robbed the victim, tied her up and left. She freed herself, summoned the town marshal, and then described to him the robbery and the two women involved. The marshal drove after them, found them and stopped their car. He informed them of the robbery and gave them the Miranda warnings. He then insisted the women return to the shop. They then drove their car back to Darrington. There they stopped their car in an alley about two doors from the victim's shop, which was located across from the jailhouse. This occurred about 20

minutes after the robbery. At this point Mrs. Howard came out of her shop and seeing the women said: "They are the ones. They're the ones that done it." The marshal then took the women into the shop. There, while Mrs. Howard stood by, the marshal had them searched by his wife acting as a matron, she having meanwhile arrived. The defendants were later charged with the robbery. Codefendant Moore, having pleaded guilty, defendant Fuller was tried alone.

On the morning of the trial she moved to suppress the state's identification evidence concerning her participation in the robbery. A hearing was then held to consider her motion. The evidence presented dealt with the occurrences in and outside the shop prior to and after the arrest. It was also shown that shortly before the trial began a deputy sheriff showed Mrs. Howard, who was expected to testify, two photographs of the two women charged with the crime. The court orally denied the motion, but entered no written findings.

Defendant claims the victim's in-court identification testimony was inadmissible because based on tainted sources, namely, the post-arrest identification upon the defendants' return to Darrington and the showing of the photographs to the victim-witness shortly before trial. She relies on *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967); *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967); and *Stovall v. Denno,* 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967), each decided the same day. *Wade* involves a federal conviction; *Gilbert* and *Stovall* each involve state convictions.

Identification of the accused is essential in a criminal trial. Such identification must comply with due process requirements. If in-court identification evidence is based upon pretrial identification procedures violative of due process, then the evidence is inadmissible because based on a tainted source. A tainted source may exist with respect to both pretrial lineup and photographic procedures used to enable the witness to identify a suspect. As pointed out in *United States v. Wade, supra:*

The lineup is most often used, as in the present case, to crystallize the witnesses' identification of the defendant for future reference.

388 U.S. at 240. *Wade* also points out:

The pretrial confrontation for purpose of identification may take the form of a lineup, also known as an "identification parade" or "showup," . . . or presentation of the suspect alone to the witness, as in *Stovall v. Denno, supra.*

388 U.S. at 229. The "presentation of the suspect alone to the witness" was characterized in *Simmons v. United States*, 390 U.S. 377, 385, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), as a "one man lineup." *Wade* held that to assure fair lineup procedures, the Sixth Amendment requires that the suspect have a right to the presence of his counsel at the lineup. Fair lineup procedures guard against the possibility that the procedures used will be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to violate due process of law. *Stovall v. Denno*, 388 U.S. at 302.

Even the use of 1-man lineup procedure without the presence of the suspect's counsel in exceptional cases may not be tainted. Thus, in *Stovall* the suspect, handcuffed to a policeman and without counsel, was brought by five policemen and two members of the district attorney's staff into the sole surviving victim's hospital room 2 days after the stabbing. It was not then known how long the victim might live and, as *Stovall* pointed out, identification at the time was "imperative." The suspect was directed to say a "few words for voice identification." The victim then identified the suspect. The court held admissible both the testimony concerning hospital room identification of the suspect and the victim's in-court identification of the defendant. Admissibility over due process objections, the court held, was determinable on the basis of the totality of the circumstances of the case.

■ *Wade* and *Gilbert*, however, contain an important limitation on the doctrine of tainted origin. *Wade* holds that

lineup procedures used outside the presence of suspect's counsel do not necessarily render in-court identification evidence inadmissible. *Wade* states:

> We do not think this disposition can be justified without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification.

388 U.S. at 240.

*Gilbert,* following *Wade,* states:

> However, as in *Wade,* the record does not permit an informed judgment whether the in-court identifications at the two stages of the trial had an independent source. Gilbert is therefore entitled only to a vacation of his conviction pending the holding of such proceedings as the California Supreme Court may deem appropriate to afford the State the opportunity to establish that the in-court identifications had an independent source, or that their introduction in evidence was in any event harmless error.

388 U.S. at 272.

Finally, *Gilbert* also held applicable the harmless error test formulated in *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967). Under that test, if an appellate court is " 'able to declare a belief that it was harmless beyond a reasonable doubt,' " the error is not reversible. *Gilbert v. California,* 388 U.S. at 274.

*Simmons v. United States, supra,* applies the *Wade, Gilbert, Stovall* doctrine to pretrial photographic identification procedures. *Simmons,* too, applies the totality of the circumstances test on a case-by-case basis. The test applied is that

> each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

390 U.S. at 384.

The doctrines of *Wade, Gilbert, Stovall, Simmons* and *Chapman* have been applied in Washington. *State v. Gefeller,* 76 Wn.2d 449, 458 P.2d 17 (1969); *State v. Hicks,* 76 Wn.2d 80, 455 P.2d 943 (1969); *State v. Kearney,* 75 Wn.2d 168, 449 P.2d 400 (1969); *State v. Redmond,* 75 Wn.2d 62, 448 P.2d 938 (1968); *State v. Ferguson,* 3 Wn. App. 898, 479 P.2d 114 (1970); *State v. Prater,* 1 Wn. App. 342, 461 P.2d 357 (1969).

In the instant case the court, in denying defendant's motion to suppress at the conclusion of the hearing on the motion, ruled:

> I am convinced that Mrs. Howard is basing her identification on the some two hours and ten minute session in her store. I do not think the "confrontation" . . . in the alley was of a tainting nature; and further, that ten minute session in the store . . . made no impression on her at all.

He also held that the photographs "do not taint her identification either."

■ The court's oral ruling is supported by substantial evidence. It is as binding on us as was the written finding in *State v. Redmond, supra.* The necessity, if any, for a written finding was impliedly waived because defendant did not request the entry of any such finding. *See State v. Shelby,* 69 Wn.2d 295, 418 P.2d 246 (1966); *State v. Haverty,* 3 Wn. App. 495, 475 P.2d 887 (1970); *State v. Woods,* 3 Wn. App. 691, 477 P.2d 182 (1970).

■ Defendant next contends the court erred in excluding the testimony of Dr. George Christian Harris, a psychiatrist called by defendant Fuller to testify to both the latter's claimed legal insanity and inability to form an intent to commit the crime charged. The psychiatrist testified that whether defendant was legally insane at the time of the robbery depended on whether she was then psychotic. He could not testify with reasonable medical certainty that defendant was psychotic when the robbery occurred. He merely testified that it was possible that she was then psychotic. Such an opinion is speculative and inadmissible.

*See State v. Carter,* 5 Wn. App. 802, 490 P.2d 1346 (1971), *review denied,* 80 Wn.2d 1004 (1972); *State v. Tyler,* 77 Wn.2d 726, 466 P.2d 120 (1970); *Ugolini v. States Marine Lines,* 71 Wn.2d 404, 429 P.2d 213 (1967).

The court declined to permit Dr. Harris to testify, in the jury's presence, that in his opinion the defendant lacked capacity to form an intent to commit the robbery. In urging the trial court erred, the defendant relies on Dr. Harris' testimony given outside the jury's presence during his interrogation for the purpose of determining whether a proper foundation existed for the receipt of his opinion testimony.

■ Upon a proper foundation being first laid, a psychiatrist's opinion testimony on the issues of legal insanity and capacity to form an intent may be given. *See State v. Carter, supra; State v. Conklin,* 79 Wn.2d 805, 489 P.2d 1130 (1971). *See State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971). Here, however, on the basis of Dr. Harris' interrogation, it was in the court's discretion to find that a proper foundation had not been laid. Dr. Harris' interrogation testimony dealt both with the issues of insanity and capacity to form an intent. His opinions were based on interviews with the defendant commencing about 4½ months after the crime was committed. Assuming, without deciding, that the delayed interviews did not render Dr. Harris' opinion as to defendant's intent inadmissible in any case (*see State v. Tyler, supra* at 758-59), nevertheless the reasons given by Dr. Harris show his opinion on the issue of intent, as well as legal insanity, to be speculative and inadmissible.

In the course of his interrogation, Dr. Harris stated "I don't feel that you can separate [legal insanity and capacity to form an intent] for any meaningful interpretation of legal insanity." He also stated "the capacity to form an intent at the time . . . is a necessary part of [defendant's] mental condition at the time of the act." When asked for his reasons to support his opinion that the defendant lacked capacity to form an intent to commit robbery, his

stated reasons included "the possibility, at least, of [the existence of] a psychotic episode" when the defendant committed the crime. In using the term "psychotic episode," Dr. Harris undoubtedly had in mind, as he testified, "she flits in and out of rational and irrational type of thinking." He explained that without a psychotic episode "she would not be legally insane." He testified "It's impossible for anybody to say whether she was psychotic at the time of this crime with any degree of certainty . . . " He accordingly would not say that there was a probability based on reasonable medical certainty that defendant was psychotic at the time of the crime.

Dr. Harris relied also on defendant's history of drug use over a period of 2 or 3 years before the crime "on an increasingly frequent basis." In doing so he suggested, by inference at least, the possibility that defendant could not control her impulses when the robbery was committed. If that is a relevant consideration, he did not testify expressly or by inference to anything beyond a mere possibility that she could not control her impulses at the time. In testifying before the jury, he had testified that defendant had taken "some L.S.D." at 11 a.m. of the day of the robbery, which occurred some 6 to 8 hours later. Neither in his statement of reasons, nor in his interrogation, did he state the quantity of LSD taken, nor the effect of that taken on defendant's capacity to form an intent, nor the duration of the effect, whatever it was. He also testified, when he testified about the factor of impulsivity, "if someone asked [defendant] whether she understood that she was robbing the store and whether she knew that was wrong that she would . . . say, 'Yes.'" Defendant made no further offer of proof on the matter of foundation.

We cannot say that the court manifestly abused his discretion in refusing to permit Dr. Harris to testify to his opinions before the jury. The determination of an expert's qualifications to testify is in the trial court's discretion, subject only to review for manifest abuse. See *Crowe v. Prinzing*, 77 Wn.2d 895, 468 P.2d 450 (1970). The court

especially relied on Dr. Harris' testimony concerning the mere possibility of a psychotic episode. His reasoning applies to capacity to form an intent, as well as to the existence of legal insanity. *See State v. Tyler, supra.*

Defendant finally contends the court erred in refusing to grant her a continuance to obtain the testimony of co-defendant Moore. Defendant's counsel had been assured by Mrs. Moore's counsel that Mrs. Moore would be present to testify at 9:30 a.m. on the last day of trial. Mrs. Moore did not appear. The parties then concluded their argument on instructions and the taking of exceptions prior to noon. She then requested a continuance to 1:30 p.m. that day. She informed the court Mrs. Moore's attorney had orally assured her that Mrs. Moore would be present to testify at approximately 1 p.m. The court denied the motion. The trial then proceeded until concluded.

█ Defendant argues that Mrs. Moore's testimony would have substantiated that of the defendant, including the latter's testimony concerning her use of drugs. She points out that the court and parties had been so informed orally and had also been informed of the assurances from Mrs. Moore's counsel given to defendant's counsel that Mrs. Moore would be present to testify. RCW 10.46.080 requires that defendant's motion for continuance to secure the testimony of an absent witness be supported by an affidavit. The affidavit must set forth the name and residence of the witness, the substance of the proposed testimony, its materiality, and a showing that due diligence has been used to secure the evidence. Due diligence requires a showing that the witness has been subpoenaed, or that the witness could not have been subpoenaed in time to assure the witness' presence at trial. In the instant case, the oral showing does not comply with RCW 10.46.080. There is not even a showing that the witness was subpoenaed or could not have been subpoenaed in time to assure her presence at trial. Accordingly, we cannot hold that the court abused its discretion in denying the continuance. *State v. Toliver,* 6

10

Wn. App. 531, 494 P.2d 514 (1972); *State v. Smith,* 56 Wn.2d 368, 353 P.2d 155 (1960). *See State v. Edwards,* 68 Wn.2d 246, 412 P.2d 747 (1966).

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied July 17, 1972.

Review denied by Supreme Court September 20, 1972.