COURT OF APPEALS DIV
STATE OF WASHINGTON

2013 SEP -9 AM 9: 26



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67509-5-I |
| | ) | (Consolidated with Nos. |
| Respondent, | ) | 67516-8-I and 67556-7-I) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| KEVIN ISAJAH VOLANTE, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| STATE OF WASHINGTON, | ) | FILED: September 9, 2013 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DARA KHANN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL MARTINEZ COPOL AKA JUAN MIGUEL MACHADO, | ) | |
| | ) | |
| Appellant. | ) | |

LEACH, C.J. — Appellants Kevin Volante, Michael Copol (aka Juan Machado), and Dara Khann appeal their convictions for first degree robbery and burglary. Volante and Khann also appeal their convictions for first degree rape. All appellants challenge the admission of evidence seized by the arresting deputy during a warrantless search of their vehicle, claiming that the initial stop of their vehicle was unlawful. They also challenge the court's imposition of a firearm enhancement on each count, arguing that the State did not present sufficient evidence that the gun used was operable. Separately, Khann challenges the court's denial of his motion to sever his trial from the codefendants. In a statement of additional grounds, he alleges that the court erred when instructing the jury about the need for unanimity regarding the firearm special verdicts.

Because the deputy had a reasonable, articulable suspicion that the appellants had been involved in criminal activity, the court correctly denied the suppression motion. The State presented sufficient evidence of operability to support the firearm special verdicts. The court properly denied Khann's motion because, at the close of evidence, the weight of the evidence was not so disparate as to justify severance. Because our Supreme Court has overruled the authority relied upon by Khann to challenge the special verdicts, the court properly instructed the jury regarding the special verdicts. Therefore, we affirm.

FACTS

At 2:55 a.m. on the morning of August 11, 2010, C.H.[1] called the King County Sheriff's Office to report a home invasion and rape. When deputies arrived, she told them that three men had bound her hands and mouth with tape and that at least two of them penetrated her vagina with their fingers. The assailants stole C.H.'s BMW and drove away in it.

About an hour later, deputies received a report that someone had abandoned a BMW at a Chevron station near C.H.'s house. The station's surveillance footage did not show a clear photo of the driver, but a witness reported seeing three males with medium complexions near the vehicle.[2]

Deputy Daniel Murphy heard the original 911 dispatch call, which described the assailant as an Asian male, aged 25-30 years old, and another deputy's updated description of three "younger" Asian males. He began searching the area for the suspects. Shortly after 4:00 a.m., while stopped at a stop sign, Murphy saw a beige Cadillac approach. As the car passed him, Murphy noticed the three occupants, who all appeared to be Asian males in their late teens or early 20s. He reported that all three of them stared at him as they passed his marked patrol car.

---

[1] The victim is referred to by her initials to protect her privacy.

[2] Through an interpreter, the gas station clerk testified that the people he saw were not black, white, or Mexican.

-3-

Finding this behavior suspicious and believing the men matched C.H.'s description of her attackers, Murphy made a U-turn and began to follow the Cadillac. He stated that the car sped up after it went through the stop sign, but that it was not speeding, and that the driver made a quick left turn into a neighborhood. Suspecting that the car was attempting to "duck" him, Murphy decided to execute a traffic stop. As the car made a "rolling stop" at the next stop sign, Murphy activated his emergency lights and stopped the vehicle. He testified that by this point, based on his suspicions that the occupants participated in the home invasion, he intended to stop them regardless of the traffic infraction.

As he walked up to the driver's side window, Murphy noticed a large kitchen knife on the backseat. After Murphy's backup arrived, they had the suspects exit the vehicle, handcuffed them, and placed them under arrest. Another officer then spotted the butt of a gun underneath the front passenger seat of the Cadillac. Officers then conducted a showup identification. C.H. identified Khann and Copol as the men who had broken into her house. She did not identify Volante.

The State charged all three with first degree robbery, first degree burglary, and first degree rape. In each count, the State alleged that the defendants were

armed with a firearm at the time. After the State concluded its case in chief, Khann's counsel rested without presenting any evidence. At the same time, based on the asserted disparity of evidence linking Khann and the other defendants to the crime, he moved to sever. The judge deferred ruling on Khann's motion until Copol and Volante had both presented their cases. At the close of all evidence, the court determined that the disparity in evidence against the three defendants did not warrant severance. The jury found all three defendants guilty on the robbery and burglary counts. It also found Volante and Khann guilty on the rape charge. The jury found that the defendants were armed with a firearm during the commission of all counts. The court imposed standard range sentences plus firearm enhancements. All defendants appeal.

## STANDARD OF REVIEW

We review the denial of a motion to suppress evidence by determining whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law.[3] Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted.[4] Unchallenged findings of fact become verities on appeal.[5] We review conclusions of law de novo.[6]

---

[3] State v. Ross, 106 Wn. App. 876, 880, 26 P.3d 298 (2001).
[4] State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).
[5] State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7] By challenging the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from it.[8]

Lastly, we review a trial court's severance ruling under CrR 4.4(c)(2) for a manifest abuse of discretion.[9] "A manifest abuse of discretion is a decision manifestly unreasonable or exercised on untenable grounds or for untenable reasons. It is one that no reasonable person would have made."[10]

## ANALYSIS

In this consolidated appeal, all three appellants challenge the validity of the initial stop of their vehicle and the sufficiency of the evidence to support the firearm special verdicts. Volante and Khann assign error to various findings and conclusions in the court's decision on the CrR 3.6 hearing. Because Copol does not assign error to these findings or conclusions, the findings are verities for purposes of his appeal. Additionally, Khann appeals the denial of his motion to sever his trial from the codefendants'. He alone filed a statement of additional

---

[6] State v. Acrey, 148 Wn.2d 738, 745, 64 P.3d 594 (2003).
[7] State v. Lord, 117 Wn.2d 829, 881, 822 P.2d 177 (1991).
[8] State v. Pedro, 148 Wn. App. 932, 951, 201 P.3d 398 (2009).
[9] State v. Larry, 108 Wn. App. 894, 911, 34 P.3d 241 (2001).
[10] In re Marriage of Tower, 55 Wn. App. 697, 700, 780 P.2d 863 (1989).

grounds challenging the court's instruction on jury unanimity for each special verdict.

First, the appellants contend that the arresting officer did not have reasonable suspicion, supported by specific, articulable facts, to stop their vehicle. Article I, section 7 of the Washington Constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Warrantless seizures are presumptively unconstitutional unless they fall into one of several carefully defined categories.

A brief investigative detention, commonly known as a Terry[11] stop, is one accepted exception to the warrant requirement.[12] A Terry stop occurs when the police briefly seize an individual for questioning based on "specific and articulable," objective facts that give rise to a reasonable suspicion that the individual has been or is about to be involved in a crime.[13] When reviewing a Terry stop's validity, we consider the totality of the circumstances,[14] including factors such as the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, the amount of physical

---

[11] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).
[12] State v. Hendrickson, 129 Wn.2d 61, 71, 917 P.2d 563 (1996).
[13] Terry, 392 U.S. at 21-22; State v. Armenta, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997).
[14] State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991).

intrusion upon the suspect's liberty, and the length of time the suspect is detained.[15]

The appellants contend that Murphy's stated reasons for the stop were pretextual and his only real justification was a hunch based on their racial appearance. A pretextual traffic stop is one made to "accomplish an impermissible ulterior motive."[16] The appellants rely on State v. Barber[17] to argue that race is an insufficient basis to justify an investigatory stop. There, the court noted that "racial incongruity, i.e., a person of any race being allegedly 'out of place' in a particular geographic area, should never constitute a finding of reasonable suspicion of criminal behavior."[18] But the Barber court also noted that in some cases, "appearance, including race and other physical attributes of a suspect, may be relevant in forming a suspicion of criminal activity."[19] Racial incongruity was not the reason for Murphy's suspicion. Indeed, the deputy

---

[15] Acrey, 148 Wn.2d at 747.

[16] State v. Ladson, 138 Wn.2d 343, 354, 979 P.2d 833 (1999). Under Ladson, "a traffic infraction may not be used as a pretext to stop to investigate for a sufficient reason to search even further." Ladson, 138 Wn.2d at 353. Murphy's unchallenged testimony was that he would have stopped the vehicle regardless of the driver's failure to stop fully at the stop sign. Because this was an investigative stop for suspected criminal activity, not merely a traffic violation stop, Ladson's specific prohibition against the pretextual use of traffic infractions to conduct warrantless stops and searches does not apply.

[17] 118 Wn.2d 335, 346, 823 P.2d 1068 (1992).

[18] Barber, 118 Wn.2d at 346.

[19] Barber, 118 Wn.2d at 348.

testified that seeing Asian American males in that area was not unusual. Instead, Deputy Murphy identified the occupants' resemblance to the suspect description as a primary reason for the stop. Given the victim's description of her attackers as young Asian American males, the race of the car's occupants was a legitimate factor for Murphy to consider.

Further, we review the evidence as a whole and do not evaluate the facts on a piecemeal basis. Murphy also identified the defendants' behavior within the car as a factor in his decision to execute the stop. He described seeing their shadows in the car moving around suspiciously after he began tailing them, and he felt from his driving behavior that the driver was attempting to elude him. Washington courts afford police officers substantial deference in their interpretation of potentially suspicious circumstances. As this court noted in State v. Marcum,[20] an officer may "'draw on [his or her] own experience and specialized training to make inferences from and deductions about cumulative information available to [him or her] that might well elude an untrained person.'"

Given the severity of the suspected crime, Deputy Murphy's experience in law enforcement, the suspects' proximity to the abandoned BMW, and their erratic, suspicious behavior, specific, articulable facts support Murphy's

---

[20] 149 Wn. App. 894, 908 n.5, 205 P.3d 969 (2009) (alterations in original) (internal quotation marks omitted) (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)).

reasonable suspicion that the appellants may have been involved in the home invasion. Because his observations led to a reasonable suspicion that the suspects were involved in the home invasion, the Terry stop was valid and the trial court correctly denied the defendants' suppression motion.

Alternatively, the appellants assert that the State failed to present sufficient evidence to support the firearm enhancement special verdicts. Evidence is sufficient if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find each element proved beyond a reasonable doubt.[21] We consider circumstantial and direct evidence equally reliable and defer to the trier of fact on conflicting testimony, witness credibility, and the persuasiveness of the evidence.[22]

To enhance an appellant's sentence in this case, the State had the burden of proving that he or an accomplice committed the crime while armed with a "firearm," i.e., "a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder."[23] Appellants contend this burden required the State to prove the firearm was operable, even though the applicable statutes do not use this word. Thus, because the State never proved that the

---

[21] State v. Montgomery, 163 Wn.2d 577, 586, 183 P.3d 267 (2008).
[22] State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).
[23] RCW 9.94A.533(3); RCW 9.41.010(7).

firearm was capable of firing shots, the State did not meet its burden. The State

disagrees, asserting that it met its burden by showing that Volante or an

accomplice used a real gun.

We do not need to resolve the parties' disagreement about the State's

burden because, even if the law requires proof of operability, this may be inferred

without any direct evidence of operability.[24] In State v. Mathe,[25] we held that the

State proved the defendant used "a real and operable gun" with the testimony of

two robbery eyewitnesses who described the guns and the defendant's express

or implied threat to use them. Similarly, in State v. Bowman,[26] we held

eyewitness testimony describing a "real" gun and describing a threat to use it

was sufficient to establish "the existence of a real, operable gun in fact."

At trial, the State admitted the handgun found in Volante's car at the time

of his arrest and presented evidence that it was loaded, had a serial number, and

was engraved "Smith and Wesson." This gun matched the victim's description of

the weapon used as a black-and-silver semiautomatic pistol. Copol told the

police the gun belonged to him and that he had purchased it about one week

before for personal protection. Viewed in the light most favorable to the State,

---

[24] State v. Mathe, 35 Wn. App. 572, 581-82, 668 P.2d 599 (1983), aff'd, 102 Wn.2d 537, 688 P.2d 859 (1984).

[25] 35 Wn. App. 572, 581-82, 668 P.2d 599 (1983), aff'd, 102 Wn.2d 537, 688 P.2d 859 (1984).

[26] State v. Bowman, 36 Wn. App. 798, 803, 678 P.2d 1273 (1984).

this evidence sufficiently supports an inference that one of the appellants was armed with a firearm during each of the offenses.

Appellant Khann contests the court's refusal to sever his trial from his codefendants'.[27] To avoid unduly burdening administration of justice, Washington law disfavors separate trials,[28] and severance under CrR 4.4(c) is at the discretion of the trial court.[29]

CrR 4.4(c)(2) provides in part,

> (2) The court . . . should grant a severance of defendants whenever:
> (i) if before trial, it is deemed necessary to protect a defendant's rights to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of a defendant; or
> (ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant.

This court reviews a trial court's denial of a motion under an abuse of discretion standard.[30] A defendant must demonstrate undue prejudice from a joint trial to

---

[27] Khann moved twice for severance on speedy trial grounds. However, on appeal, he only challenges the court's denial of his motion to sever for disparity of evidence at the close of the State's case.

[28] State v. Grisby, 97 Wn.2d 493, 506-07, 647 P.2d 6 (1982); State v. Ferguson, 3 Wn. App. 898, 906, 479 P.2d 114 (1970).

[29] Larry, 108 Wn. App. at 911.

[30] State v. Hoffman, 116 Wn.2d 51, 74, 804 P.2d 577 (1991).

establish an abuse of discretion.[31]   To do this, the defendant "'must be able to

point to specific prejudice.'"[32]   Specific prejudice may be established by showing

> "(1) antagonistic defenses conflicting to the point of being
> irreconcilable and mutually exclusive; (2) a massive and complex
> quantity of evidence making it almost impossible for the jury to
> separate evidence as it related to each defendant when
> determining each defendant's innocence or guilt; (3) a co-
> defendant's statement inculpating the moving defendant; (4) or
> gross disparity in the weight of the evidence against the
> defendants."[33]

To justify a severance, the claimed prejudice must outweigh the court's concern

for judicial economy.[34]   Khann moved for severance based upon the disparity of

the evidence against him and his codefendants.  At the time the State rested, the

only evidence linking Khann to the crime was the victim's showup identification,

and the court noted that Khann successfully impeached her related testimony at

trial.  Since Khann did not present any evidence in his own defense, he argues

that the court should have granted his severance motion based on the facts in

evidence at the time the State rested.

CrR 4.4(a)(1) plainly states that a severance motion may be made "before

or at the close of all the evidence" in a consolidated case.  Khann's motion was

---

[31] State v. Alsup, 75 Wn. App. 128, 131, 876 P.2d 935 (1994).
[32] Larry, 108 Wn. App. at 911 (quoting State v. Wood, 94 Wn. App. 636, 641, 972 P.2d 552 (1999)).
[33] State v. Canedo-Astorga, 79 Wn. App. 518, 528, 903 P.2d 500 (1995) (quoting United States v. Oglesby, 764 F.2d 1273, 1276 (7th Cir. 1985)).
[34] Hoffman, 116 Wn.2d at 74.

timely but, contrary to his argument, the rule does not require the judge to rule on the motion immediately. A rule discussing severance of multiple defendants' trials necessarily contemplates that multiple parties may be presenting evidence. Had the rule's author intended to require that the trial court make its decision based solely on the evidentiary record at the time of the motion, rather than all the evidence to be considered by the jury, it could have included this requirement. But such a requirement would not address the pertinent problem, the risk of one defendant being convicted based upon the strength of the evidence against codefendants.

The State correctly notes that Khann seeks to benefit from forcing the judge to ignore probative evidence about Khann's guilt by requiring the court to rule before hearing all the evidence. This negates the principle of judicial economy that consolidated trials serve. If the court had severed Khann's trial, then the State could call Copol and Volante as the State's witnesses in Khann's subsequent trial. Because the court waited until after Copol and Volante presented their defense evidence, which also provided more evidence against Khann, the court determined that the disparity in the weight of the evidence did not warrant severance.

Khann additionally argues that Copol's statements were impeachment evidence and the court improperly considered them as substantive evidence against him. "[A]bsent a request for a limiting instruction, evidence admitted as relevant for one purpose is deemed relevant for others."[35] Because Khann did not object to Copol's testimony and did not request a limiting instruction, the jury properly considered it as substantive evidence against Khann.

In his statement of additional grounds, Khann alleges that the court's instruction that the jury must be unanimous to return a special verdict violates the nonunanimity rule established in State v. Bashaw.[36] However, in State v. Guzman Nuñez,[37] our Supreme Court reconsidered and overruled Bashaw. The court concluded that the challenged jury instructions, which required a unanimous "yes" or "no" decision on the special verdict form, were correct. Here, based on Guzman Nuñez, the trial court did not err with the special verdict form. Khann's argument fails.

## CONCLUSION

The court did not abuse its discretion by denying the appellants' suppression motion. The State presented sufficient evidence of operability to

---

[35] State v. Myers, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997).
[36] 169 Wn.2d. 133, 146-47, 234 P.3d 195 (2010).
[37] 174 Wn.2d 707, 709-10, 285 P.3d 21 (2012).

support the firearm special verdicts.  And the court did not abuse its discretion by

denying Khann's motion to sever.  Therefore, we affirm.


_Leach, C.J._

WE CONCUR:

_Cox, J._                          _Becker, J._