[No. 57254-2.   En Banc.   October 3, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. ALVIN PAUL
MITCHELL, ET AL, *Appellants*.

*Nancy Emmet Horgan,* for appellant Mitchell.

*Jesse Wm. Barton* of *Washington Appellate Defender Association,* for appellant Hankerson.

*Norm Maleng, Prosecuting Attorney,* and *Alfred W. Matthews, Theresa Fricke,* and *Lynn Moberly, Senior Deputies,* for respondent.

SMITH, J. — Appellants Alvin P. Mitchell and Gerald S. Hankerson, and by certification from the Court of Appeals, Division One, appealed to this court their convictions before a jury in the King County Superior Court for aggravated murder in the first degree for the 1987 robbery and slaying of Nai Vang Saeturn near 24th Avenue and East Spring Street in Seattle. They assign numerous errors, primarily concerning joinder of their trials, rejection of their proposed jury instructions, amendment of the informations to charge them with the alternate offense of felony murder, and the nature of the life sentences imposed.

We find that the trial court's failure to grant discretionary severance was harmless error and that the trial court did not otherwise commit error. We affirm the trial court.

On May 18, 1987, shortly before 11 p.m., Nai Vang Saeturn, age 25, walked from his Seattle home to a neigh-

borhood convenience store to purchase soft drinks and ice. He took with him a wallet containing about $100 and a bank card. A number of persons observed him in the store near 23rd Avenue and East Union Street while he made his purchases. Among them were Renaldo M. Jones, Dwight L. Miles, David G. Peterson and appellants Gerald S. Hankerson and Alvin P. Mitchell.[1] Mitchell and Hankerson followed Mr. Saeturn after he left the store. They in turn were followed by Miles and Peterson.

Near the corner of 24th Avenue and East Spring Street, Appellant Hankerson blocked Mr. Saeturn's path while Appellant Mitchell grabbed him from behind. A struggle ensued and Mitchell slashed Mr. Saeturn's throat. Mr. Saeturn dropped his groceries, which by then were covered with his blood. He escaped and ran screaming down the street, leaving a visible trail of blood. Hankerson and Mitchell chased and caught him about a half block from the initial attack. Appellant Hankerson held Mr. Saeturn down and beat him with brass knuckles, while Appellant Mitchell repeatedly stabbed him in the back.

Shortly afterward, Nai Vang Saeturn was taken to Harborview Medical Center where he died in the operating room. In addition to his throat being cut, he had been stabbed once in the right arm, four times in the chest, and three times in the back. John D. Howard, M.D., the medical examiner, testified that Mr. Saeturn also suffered multiple blunt trauma which could have been caused by being struck with brass knuckles or by being kicked. He further testified that the cause of death was the multiple stab wounds to Mr. Saeturn's chest and back resulting in collapse of his lungs.

Two persons, Dwight Miles and David Peterson, also observed the attack. Mr. Miles took a soft drink from the bloody grocery bag and later drank it. Mr. Peterson picked up some change dropped by Mr. Saeturn. They then met

---

[1] Mitchell is commonly known and referred to by several witnesses as "Bowlegged Lou".

Renaldo M. Jones a few blocks from the scene and told him about the man that Hankerson and Mitchell had "cut up". Mr. Jones then went home.

Appellants Hankerson and Mitchell later went to Mr. Jones' residence and asked if they could wash their shoes there to remove blood. Jones observed blood on Mitchell's pants. He denied them permission. Ms. Catrina A. Jones was also present and saw appellants come to her residence that evening. Appellants left and went to Mitchell's house.

Appellant Mitchell then went to the home of Antrell Lemar and Lathesia Chante Nelson (Lemar Nelson and Chante Nelson), brother and sister, about 30 minutes after the attack. When asked by Ms. Nelson whether he had stabbed "that boy down there", Mitchell admitted stabbing Nai Vang Saeturn and described the incident to her.

Appellant Mitchell told Ms. Nelson that he and Appellant Hankerson had followed the man from the store because they had seen him there with a lot of money. Mitchell said he held a knife to the man's neck and because Mr. Saeturn "tried to be a hero", he (Mitchell) slashed Mr. Saeturn's throat. Mitchell described to Ms. Nelson how he and Hankerson chased and caught the injured man, and how Appellant Mitchell stabbed Mr. Saeturn while Appellant Hankerson beat Mr. Saeturn with brass knuckles. Ms. Nelson testified that Mitchell said he hoped the man died.

Another witness, Ms. Nancy Niccum, saw from her window two men on the street examining a discarded bag of groceries on the night of the incident and said that one of them was "bowlegged".

The next day, Renaldo M. Jones again saw Appellant Mitchell, who had a bank card he said he obtained the night before. Mr. Saeturn had lost a bank card during the attack. A subsequent attempt by someone to obtain $110 with Mr. Saeturn's bank card failed when an improper access code was entered in the bank machine.

Sometime during the summer of 1987, and after May 18, 1987, Appellant Mitchell told David Peterson not to talk about what he (Peterson) knew. Mitchell told Peterson he would "get" anyone who talked.

On December 7, 1987, Gerald S. Hankerson and Alvin P. Mitchell were charged by information with *murder in the first degree* and with *felony murder*, the underlying felony being the robbery of Nai Vang Saeturn. On December 21, 1987, the State filed an amended information charging, in addition and in the alternative, *aggravated first degree murder*. They appeared before the Honorable Jerome M. Johnson, King County Superior Court. Both defendants objected to the amendment on the ground that it allowed the State to bring alternate charges. Both moved to require the State to elect its charges. The court denied the motions. The defendants were rearraigned and both pleaded "not guilty" to all charges.

Before trial, both defendants moved for severance of their trials. The motions requested both discretionary and mandatory severance under CrR 4.4(c). Appellant Hankerson also moved, in the alternative, to redact certain statements of Mitchell's to delete references to him. The statements were to be offered as exceptions to the hearsay rule. The court denied all motions.

Appellant Mitchell did not testify at the trial. His defense consisted merely of attacking the credibility of the State's witnesses.

Appellant Hankerson testified in his own behalf and generally denied all charges against him. He also attacked the credibility of the State's witnesses. But, in addition, he introduced testimony of Detective James K. Yoshida that Mr. Mitchell had named other persons as being responsible for the assault and slaying of Mr. Saeturn. When the State began cross examination of the detective, Mr. Mitchell, who had earlier opposed Mr. Hankerson's decision to call the

detective as a witness at all, did not object to questions on direct examination, but only *objected to questions by the State on cross examination.* The State then voluntarily limited its cross examination of the witness.

After all the evidence was in, the court again denied appellants' motions to require the State to elect between charges. The court also refused to give appellants' proposed instructions which would have required the jury to consider premeditation before considering the aggravating factor of first degree robbery instead of considering premeditation and first degree robbery simultaneously as permitted by the court's instructions.

The jury found both Gerald S. Hankerson and Alvin P. Mitchell guilty of aggravated murder in the first degree. The court sentenced both defendants to life in prison without the possibility of parole.

This appeal timely followed. The Court of Appeals, Division One, certified the case to this court on June 5, 1990. We accepted it for review.

The following questions are presented by this case:

1. Whether the trial court erred in denying appellants' motions for mandatory severance;

2. Whether the trial court erred in denying appellants' motions for discretionary severance;

3. Whether the trial court erred in refusing to require the State to elect between charges;

4. Whether the trial court erred in admitting Appellant Mitchell's hearsay statements;

5. Whether the trial court erred in refusing to allow impeachment of the State's witnesses by admission of evidence of their juvenile offenses;

6. Whether the trial court erred in refusing to give appellants' proposed "to convict" jury instructions; and,

7. Whether, if the trial court erred, any errors were harmless.

MANDATORY SEVERANCE

Appellants assign error to the court's failure to grant their motions for mandatory severance of their trial under CrR 4.4(c)(1), which provides:

> A defendant's motion for severance on the ground that an out-of-court statement of a codefendant referring to [the defendant] is inadmissible against [the defendant] shall be granted unless:
>
> (i) the prosecuting attorney elects not to offer the statement in the case in chief;
>
> (ii) deletion of all references to the moving defendant will eliminate any prejudice to [the defendant] from the admission of the statement.

Although the State offered Appellant Mitchell's out-of-court statements in its case in chief, and although the court did not redact the statements, the court nevertheless properly denied severance because the statements were *not* inadmissible against Appellant Hankerson. They qualified as statements against interest under ER 804(b)(3).

Rule of Evidence 804(b)(3) provides that when the declarant is unavailable,[2] the following shall *not* be excluded by the hearsay rule:

> *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject [the declarant] to civil or criminal liability, or to render invalid a claim by [the declarant] against another, that a reasonable [person] in [the declarant's] position would not have made the statement unless [that person] believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

■ The circumstances of this case are in most respects similar to those in *State v. Parris.*[3] In *Parris*, the defendant objected to admission of hearsay statements of a declarant

---

[2]Alvin P. Mitchell was "unavailable" because he asserted his Fifth Amendment privilege against testifying at his trial. ER 804(a)(1).

[3]98 Wn.2d 140, 654 P.2d 77 (1982). *See also State v. Barber*, 38 Wn. App. 758, 689 P.2d 1099 (1984), *review denied*, 103 Wn.2d 1013 (1985).

who asserted his Fifth Amendment privilege against testifying. In that case, however, the declarant was not a codefendant. The court allowed the statements because they were accompanied by corroborating circumstances or "particularized guarantees of trustworthiness." The court adopted a 5-part inquiry with factors for evaluating the trustworthiness of such a declaration, which may be stated as follows:

1. Was there an apparent motive for declarant to lie?

2. What was the general character of the declarant?

3. Did more than one person hear declarant's statement?

4. Was the statement made spontaneously?

5. What was the timing of the declaration and the relationship between declarant and the reciting witness?[4]

These factors are not exclusive and should be considered in conjunction with four so-called "*Dutton* factors",[5] which may be summarized as follows:

1. Does the statement contain an express assertion about past facts?

2. Did the declarant have personal knowledge of the identity and role of the other participants in the crime?

3. Was the declarant's statement founded on faulty recollection?

4. Was the statement made under circumstances which provide reason to believe the declarant misrepresented declarant's involvement in the crime?[6]

The *Parris* test thus is a balancing test requiring overall consideration of the various factors. Appellant Hankerson argues that Mitchell's hearsay statements do not meet the

---

[4]*See State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982) (citing *United States v. Alvarez*, 584 F.2d 694 (5th Cir. 1978)).

[5]*State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982) (citing *Dutton v. Evans*, 400 U.S. 74, 88-89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970)).

[6]*See State v. Parris*, 98 Wn.2d 140, 145-46, 654 P.2d 77 (1982) (citing *Dutton v. Evans*, 400 U.S. 74, 88-89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970)).

*Parris* test. He first argues that Appellant Mitchell had an apparent motive to lie to Ms. Chante Nelson, the sister of his acquaintance, Lemar Nelson,[7] in order to set up a "cut throat" defense for future plea bargaining. This argument fails because Mitchell's statements were made to Ms. Nelson before any suspicion fell upon him. On balance, this factor, which includes the first *Parris* factor, as well as the fourth *Dutton* factor,[8] does not support Mr. Hankerson's contention that Mitchell's statements were inadmissible in this case.

Appellant Hankerson next argues that Appellant Mitchell had a strong disposition to lie to the Nelsons, as evidenced by his implication of four "straw men" when questioned by police. This argument fails because the Nelsons were acquaintances, not police officers. There is nothing in the record which indicates that Mitchell in his statements to his acquaintances and confidants implicated persons other than Appellant Hankerson. This factor does not support Hankerson's contention under the first *Parris* factor.

The second *Parris* factor requires no comment. The character of Appellant Mitchell is apparent from the circumstances.

Appellant Hankerson concedes that Appellant Mitchell's statements were made in the presence of at least two persons, *Chante* and *Lemar* Nelson, although Lemar Nelson did not testify concerning Mr. Mitchell's statements to Ms. Nelson. Thus, the third *Parris* factor does not support Appellant Hankerson's inadmissibility argument.

█ Appellant Hankerson argues, however, that under the fourth *Parris* factor, Mr. Mitchell's statements were not

---

[7]Ms. Chante Nelson testified she had known Alvin P. Mitchell for 6 months or more and that her brother, Lemar, and Mitchell had been in "juvenile court together."

[8]*See State v. Barber*, 38 Wn. App. 758, 764, 689 P.2d 1099 (1984), *review denied*, 103 Wn.2d 1013 (1985).

made spontaneously, but rather in response to questioning. The record indicates that Ms. Chante Nelson prompted Mitchell's statements by asking him whether he had stabbed "that boy [Mr. Saeturn] down there." His statement in response was not "a confession made in the coercive atmosphere of official interrogation." This factor thus does not support Appellant Hankerson's inadmissibility argument.

Appellant Hankerson argues that, under the fifth *Parris* factor, "there is nothing in the record which suggests any sort of mutual trust between Chante Nelson and Mr. Mitchell." But the record indicates that Mr. Mitchell visited the Nelsons within approximately 30 minutes of the attack on Nai Vang Saeturn. They were acquaintances, if not friends, and knew Mitchell by his street name, "Bowlegged Lou". On balance, this factor does not support Appellant Hankerson's inadmissibility argument.

Under the first *Dutton* factor, Mr. Mitchell's statements were largely assertions of past fact. This factor is the single one which weighs most in favor of Appellant Hankerson's argument that Appellant Mitchell's statements are inadmissible. However, it stands alone against the remaining *Dutton* and *Parris* factors. Since the court must balance all the factors (and since the factual assertions are corroborated by additional testimony, as well as forensic evidence) this factor, of itself, is not enough to preclude admissibility of Appellant Mitchell's statements.

The second and third *Dutton* factors are all that remain. Alvin P. Mitchell obviously had personal knowledge of the identity of his accomplice. His statements could not have been based upon faulty recollection since they were made within minutes of the events to which they refer. These factors do not support Appellant Hankerson's inadmissibility arguments.

Upon balancing all *Parris* and *Dutton* factors, Appellant Hankerson has not sufficiently shown that Alvin P. Mitchell's hearsay statements were inadmissible. The trial

court did not err in refusing to grant mandatory severance of appellants' trials.

### DISCRETIONARY SEVERANCE

Appellants assign error to the court's failure to grant their motions for discretionary severance of their trial under CrR 4.4(c)(2), which provides:

> The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (i), should grant a severance of defendants whenever:
>
> . . . .
>
> (ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant.

■ The denial of a motion for separate trials of jointly charged defendants is entrusted to the sound discretion of the trial court and will not be disturbed on appeal absent a manifest abuse of discretion.[9]

■ However, in *State v. Grisby*,[10] the court elaborated (quoting from *State v. Ferguson*):[11] "[s]eparate trials should be required only in those instances in which an out-of-court statement by a codefendant expressly or by direct inference from the statement incriminates his fellow defendant"[12] and explained that "[t]he problem with *Ferguson* was inability to cross-examine codefendants, a difficulty not present" in *Grisby*.[13]

In this case, Appellant Mitchell's out-of-court statements expressly incriminated his codefendant, Appellant Hanker-

---

[9]*State v. Grisby*, 97 Wn.2d 493, 507, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983).

[10]97 Wn.2d 493, 507, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983).

[11]3 Wn. App. 898, 479 P.2d 114 (1970).

[12]*State v. Grisby*, 97 Wn.2d 493, 507, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983) (quoting *State v. Ferguson*, 3 Wn. App. 898, 906, 479 P.2d 114 (1970)).

[13]*State v. Grisby*, 97 Wn.2d 493, 507, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983) (citing *State v. Ferguson*, 3 Wn. App. 898, 479 P.2d 114 (1970)).

son. Mr. Hankerson was unable to cross-examine Mr. Mitchell, who did not take the witness stand during trial. Under Grisby, the trial court erred in denying Appellant Hankerson's motion for discretionary severance of his trial. This error, however, is harmless.[14]

## ELECTION OF CHARGES

Appellants argue that the trial court erred in permitting the State to amend its informations to include felony murder among the charges against them without requiring the State to elect between the charges.

■ ■ Prosecutors are vested with wide discretion in determining whether to charge suspects with criminal offenses.[15] Felony murder is not a lesser included offense of aggravated murder in the first degree[16] and thus must be charged separately. Appellant Hankerson argues that permitting the State to include felony murder among the charges, without requiring it to elect between those charges, penalized him for asserting his right to a jury trial because the maximum penalty for felony murder, to which he *could* have pleaded guilty, is life *with the possibility of parole*; whereas the minimum penalty for aggravated first degree murder, of which he was convicted, is life *without the possibility of parole*. This argument is without merit. This issue was decided in the recent case of *State v. Bowerman*,[17] in which we stated at page 803:

> Bowerman's reliance on [*United States v.*] *Jackson* [390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968)] is misplaced. *Jackson* addresses a statutory scheme where someone who pleads guilty to kidnapping faces a lesser maximum sentence than someone who has a jury trial on a kidnapping charge. [*State v.*] *Frampton*[, 95 Wn.2d 469, 627 P.2d 922

---

[14]*See State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986).

[15]*E.g., State v. Judge*, 100 Wn.2d 706, 713, 675 P.2d 219 (1984).

[16]*State v. Irizarry*, 111 Wn.2d 591, 592, 763 P.2d 432 (1988).

[17]115 Wn.2d 794, 802 P.2d 116 (1990).

(1981)] and *Robtoy* [*v. Kinchloe*, 871 F.2d 1478 (9th Cir. 1989), *cert. denied*, 494 U.S. 1031, 108 L. Ed. 2d 619, 110 S. Ct. 1483 (1990)] each address a statutory scheme where someone who pleads guilty to first degree murder faces a lesser maximum sentence than someone who has a jury trial on a first degree murder charge. Those cases stand for the principle that a statutory scheme that punishes people *charged with the same offense* differently, depending upon whether they plead guilty or have a jury trial, is unconstitutional.

Washington's statutory scheme does not punish people differently based on how guilt is determined. A person who pleads guilty to felony murder faces the same maximum penalty as a person a jury convicts of felony murder. Similarly, a person who pleads guilty to aggravated murder faces the same maximum penalty as a person the jury convicts of aggravated murder. The statutes in *Jackson, Frampton,* and *Robtoy* treated people charged with the same crime differently depending upon whether they pleaded guilty or were found guilty by a jury. Under the current Washington statutes, however, people charged with the same crime face the same maximum penalty regardless of how their guilt is determined. The different maximum sentences that Bowerman faced were based upon *which charge she was convicted of*, not upon how her guilt was determined. Therefore, there is no unconstitutional infringement on her right to trial.

## HEARSAY

In his contention that he should have been granted a separate trial, Appellant Mitchell also argues that his statements to Ms. Chante Nelson should not have been admitted against him. He claims he was denied a fair trial because his codefendant attacked his credibility by introducing his hearsay statements to Ms. Nelson and his statements to Detective Yoshida (in which Appellant Mitchell implicated persons other than Mr. Hankerson in the attack on Mr. Saeturn). Thus, Mitchell argues, even though he himself did not testify, his codefendant nevertheless was allowed to impeach him.

Rule of Evidence 801(d)(2) provides that a statement is not hearsay if the statement is offered against a party and is the party's own statement. The State offered Mitchell's out-of-court statements to Ms. Nelson against both parties. In contrast, it was not the State, but was Appellant Mitchell's codefendant Hankerson, who offered into evi-

dence Mitchell's out-of-court statements to Detective Yoshida. Those statements would have been admissible if offered by the State in its case in chief, *but they were only offered by codefendant Hankerson in his case in chief.*

■ Appellant Mitchell unsuccessfully attempted to impeach Ms. Nelson by cross examination and by moving to admit any juvenile criminal records pertaining to her. Since Mitchell's statements to Detective Yoshida tended to impeach his statements to Ms. Nelson, the trial court did not err by admitting them in Mr. Hankerson's case in chief. However, to the extent that the statements to Detective Yoshida tended to brand Mr. Mitchell as a liar even though he did not testify in his own behalf, Mr. Mitchell's argument for a separate trial would at least have some merit.[18]

### IMPEACHMENT BY JUVENILE RECORDS

Appellant Mitchell argues that the court erred in refusing to admit evidence of the juvenile records of the State's witnesses. The admissibility of such evidence is governed by ER 609(d), which provides:

> Evidence of juvenile adjudications is generally not admissible under this rule [ER 609].[19] The court may, however, in a criminal case allow evidence of a finding of guilt in a juvenile offense proceeding of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

Admission of evidence of conviction of a crime to attack the credibility of an adult is governed by former ER 609(a), which provides:

> **General Rule.** For the purpose of attacking the credibility of a witness, evidence that [the witness] has been convicted of a crime shall be admitted if elicited from [the witness] or

---

[18]Appellant Mitchell joined Appellant Hankerson's arguments supporting a motion for discretionary severance. Obviously if Mr. Hankerson's motion had been granted, Mr. Mitchell's motion would have been moot.

[19]*See* ER 609(a).

established by public record during cross examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which [the witness] was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

The record indicates a juvenile *conviction* for only one of the State's witnesses, Renaldo M. Jones. The offense was possession of stolen property in the second degree. Appellant Mitchell does not dispute the State's contention that possession of stolen property in the second degree is not a crime involving dishonesty or false statement. Thus, Mr. Jones' juvenile conviction would not have been admissible even if it were an adult conviction. The court thus did not err in refusing to allow impeachment of the witness by his juvenile record.

▮ Appellant Mitchell also complains that the juvenile records (including charges, probations, and grants of immunity from prosecution) for State's witnesses Chante Nelson, David Peterson and David Miles should have been admitted. He cites *Davis v. Alaska*[20] for the proposition that evidence that a witness is on probation from a juvenile conviction at the time of testifying is admissible to establish bias. He concedes, however, that "the record is unclear as to how many of the three witnesses were actually on probation . . .." Actually, there is no indication in the record whether any of these witnesses had juvenile records. There was certainly no evidence that either was on juvenile probation at the time of trial. *Davis* cannot then support Mr. Mitchell's position. Appellant Mitchell similarly provides no evidence that any of the State's witnesses had been convicted of crimes involving dishonesty or false statement or any crimes punishable by more than 1 year of imprisonment. Therefore, he has not established error by the trial court in refusing to allow impeachment of the witnesses by their "juvenile records". The trial court

---

[20] 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974).

did not err in refusing to admit unspecified and merely hypothetical juvenile records for the purpose of establishing witness bias.

## JURY INSTRUCTIONS

Appellants argue that the court erred in refusing to give their proposed jury instructions which would have required the jury to first consider the murder in the first degree charges before considering the aggravating circumstance of robbery in the first degree. This, they claim, unfairly denied them the benefit of the presumption of innocence for the element of premeditation in the homicide charges.

■ Both appellants acknowledge that the trial court's "to convict" instructions were patterned after the "to convict" instruction approved in *State v. Mak*.[21] No exceptions were taken to these instructions at trial. The appellants have not provided a sufficient basis in this case for overruling *Mak* and we therefore decline to consider it.

## HARMLESS ERROR

■ ■ Constitutional errors, including violations of a defendant's rights under the confrontation clause, may be so insignificant as to be harmless.[22] A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of prejudicial error. Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless.[23]

---

[21]105 Wn.2d 692, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986).

[22]*State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985) (citing *Harrington v. California*, 395 U.S. 250, 251-52, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969); *Chapman v. California*, 386 U.S. 18, 21, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065, *reh'g denied*, 386 U.S. 987 (1967)), *cert. denied*, 475 U.S. 1020 (1986).

[23]*State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985) (citing *State v. Stephens*, 93 Wn.2d 186, 190-91, 607 P.2d 304 (1980)), *cert. denied*, 475 U.S. 1020 (1986).

In this case, although appellants assign a number of errors, the only apparent error made by the trial court was its failure to grant discretionary severance of appellants' trials. Under the rule stated in *Grisby*, this case does present a fact pattern favoring discretionary severance: a codefendant not testifying, and therefore not subject to cross examination, made out-of-court statements incriminating the other defendant; the statements themselves are admissible as exceptions to the hearsay rule or as admissions against interest of the declarant; but the inability of the nondeclaring defendant to cross-examine the declarant, and the implied impeachment of the nondeclaring defendant, raise questions concerning the Sixth Amendment confrontation rights of each defendant.

The trial court erred by not granting discretionary severance. But it must still be determined whether the error was harmless.

If there were separate trials, Appellant Mitchell's out-of-court statements to Ms. Chante Nelson would have been admissible against him as nonhearsay admissions against interest. They would have been admissible against Mr. Hankerson, as well, under the *Parris* test. Mr. Mitchell's out-of-court statements to Detective Yoshida would have been admissible against him if offered by the State. It is unclear what benefits appellants would have gained from separate trials since all the questioned out-of-court statements would have been admissible in separate trials.

Even absent the out-of-court statements, the remaining evidence is overwhelming. Dwight Miles and David Peterson testified that they followed appellants and witnessed them beating Mr. Saeturn. Renaldo M. Jones testified that appellants came to his residence shortly after the incident and asked permission to wash blood from their shoes, and testified that Appellant Mitchell had blood on his pants at that time. Mr. Jones' sister, Ms. Catrina A. Jones, corrobo-

rated his testimony that Mitchell and Hankerson came to the Jones residence that evening. Mr. Saeturn lost a bank card in the assault. Appellant Mitchell had a bank card, apparently belonging to Mr. Saeturn, the day after the incident. Someone unsuccessfully attempted to withdraw $110 with the bank card Mr. Saeturn lost in the attack. During the summer of 1987, following the killing, Appellant Mitchell told David Peterson not to talk about what he (Peterson) knew. Peterson testified that Mitchell said he would "get" anyone who talked.

When we view the untainted evidence in conjunction with the out-of-court statements which would have been admissible in separate trials, we conclude beyond a reasonable doubt that a reasonable jury would have reached the same result in separate trials for these appellants. Thus, the trial court's failure to grant discretionary severance of their trials is harmless error.

We conclude that the trial court did not err in (1) denying appellants' motions for mandatory severance; (2) refusing to require the State to elect between charges; (3) admitting Appellant Mitchell's out-of-court statements; (4) refusing admission of witnesses' juvenile records; or (5) refusing to give appellants' proposed "to convict" instructions.

We further conclude that under *Grisby*, the trial court erred in refusing to grant appellants' motions for discretionary severance. However, under *Guloy*, any error was harmless because a reasonable jury would have reached the same result under the overwhelming evidence supporting conviction of both appellants.

We therefore affirm the trial court in the convictions and sentences.

DORE, C.J., UTTER, DOLLIVER, and GUY, JJ., and CALLOW, J. Pro Tem., concur.

ANDERSEN, J. (concurring) — I concur with the majority but, with respect to the claims of manifest instructional error affecting constitutional rights, would add as follows.

Such claims may be made for the first time on appeal. RAP 2.5(a)(3). All such claims relating to the instructions given in this case, however, are predicated on the factual proposition that both defendants were not directly and actively involved in the murder. The evidence is otherwise.

The evidence showed that the two defendants were together before, during and after the murder. Together, they watched the victim open his wallet with cash in it at the store and then together followed him approximately two blocks and attacked him. When the victim broke loose and ran, both of them ran after him. Then, while one defendant (Mitchell) stabbed the victim, the other (Hankerson) held and beat him while wearing brass knuckles. Afterward, both defendants went together to a residence where they washed the victim's blood off their shoes.

There is on that basis, therefore, no reversible constitutional instructional error. *See, e.g., Tison v. Arizona*, 481 U.S. 137, 95 L. Ed. 2d 127, 107 S. Ct. 1676 (1987).

BRACHTENBACH, DURHAM, and GUY, JJ., concur with ANDERSEN, J.